UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
MICHAEL SPAGNOLA,              )
                               )
            Plaintiff,         )
                               )    CIVIL ACTION NO.
            v.                 )    09-CV-10846-PBS
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM AND ORDER**

October 19, 2010

Saris, U.S.D.J.

## I.   INTRODUCTION

Plaintiff Michael Spagnola, who suffers from multilevel degenerative disc disease, back pain and other ailments, challenges the final decision of the Commissioner of Social Security denying him a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  After a review of the record, the Court **DENIES** plaintiff's Motion to Reverse [Docket No. 17] and **DENIES** defendant's Motion for an Order Affirming the Decision of the Commissioner [Docket No. 19], but **REMANDS** for further proceedings consistent with this opinion.

## II.  BACKGROUND

### A.  Employment and Medical History

Plaintiff was born on July 21, 1971 and is a high school graduate.  (Administrative Transcript ("Tr.") at 33, 78, 82.)  He worked in the construction industry as a concrete foundation worker and machine operator for several years.  (Id. at 32-33, 107.)  His responsibilities involved frequent heavy lifting; for example, plaintiff installed and repaired large water pipes, fire hydrants, and sewer pipes.  (Id. at 107, 115-16.)  At the administrative hearing, a vocational expert ("VE") classified plaintiff's work on concrete foundations as unskilled, very heavy labor, and his position as a machine operator as semi-skilled, heavy labor.  (Id. at 18, 35.)  Plaintiff has not had substantial gainful employment since December 1, 2002, when he left his job as a heavy equipment operator with Testa Corporation.  (Id. at 4, 14-15, 87-88, 98-99.)

In 1997, plaintiff suffered a back injury at work while trying to lift a fire hydrant.  (Id. at 15, 228).  He was diagnosed with degenerative disc disease, and treatment included discectomy surgery in 1998.  (Id. at 15, 32, 109-10, 228).  Although the operation initially provided relief, about one year later plaintiff's lower back pain returned.  (Id. at 17, 228).  This condition was exacerbated by a 2004 car accident.  (Id. at 17, 121-22, 169-73.)  Plaintiff reports that his back pain is

2

chronic and severe, at times radiating up to his neck and arms, and down to his legs and feet. (Id. at 16, 29, 40, 121.) A lumbar MRI conducted on October 15, 2008 confirmed multilevel degenerative disc disease and revealed prominent bulging of plaintiff's L4-L5 disc, as well as a hemilaminectomy defect at the L5-S1 disc with likely post-operative fibrosis. (Id. at 15, 226-27, 231.) In addition to his back condition, plaintiff suffers from osteoarthritis (id. at 6, 15, 31, 234-35), gout (id. at 31, 33, 40, 106, 128, 145, 160-61, 181, 196), and depression (id. at 5, 124-25, 127-28, 144, 181, 195). He also has a history of illegal substance abuse (marijuana, cocaine, ecstasy, heroin, alcohol and tranquilizers), but reported at the administrative hearing that he no longer uses illicit substances. (Id. at 5, 28, 181, 192, 205.) In 2007, he reported going daily to a methadone clinic. (Tr. 123.)

**B.    Procedural History**

On February 16, 2005, plaintiff filed an application with the Social Security Administration for a period of disability and Disability Insurance Benefits, and on December 6, 2006, he filed for Supplemental Security Income benefits. (Id. at 12, 47.) In both applications, plaintiff alleged that his disability began on December 1, 2002. (Id. at 12, 105-06.) His claims were initially denied on June 11, 2007. (Id. at 12, 50-55.) They were again denied on June 11, 2008 after reconsideration by a

federal reviewing official.  (<u>Id.</u> at 12, 44-49.)  Plaintiff
subsequently filed a timely request for a hearing before an
Administrative Law Judge ("ALJ").  (<u>Id.</u> at 12, 58-59.)  This
hearing was held before ALJ Alan Mackay on November 24, 2008, in
Boston, Massachusetts.  (<u>Id.</u> at 12, 21-41.)  Plaintiff was
represented by counsel and testified at the hearing.  (<u>Id.</u>)  A VE
also testified.  (<u>Id.</u>)

The ALJ issued a decision on December 30, 2008, finding
plaintiff not disabled for purposes of the Social Security Act
and denying his claims.  (<u>Id.</u> at 12-20.)  Although the ALJ
determined that plaintiff's degenerative disc disease and
osteoarthritis are both severe impairments, he found that
plaintiff's residual functional capacity ("RFC") allows him to
perform work that involves light lifting and occasional climbing,
stooping, and crouching, with the assistance of a cane for
ambulation.  (<u>Id.</u> at 15, 18.)  Consistent with VE testimony, the
ALJ found that plaintiff "has been capable of making a successful
adjustment" to occupations that exist in significant numbers in
the national economy, including parking lot cashier and bench
inspector.  (<u>Id.</u> at 19.)  The ALJ also found that plaintiff's
allegations regarding the limiting effects of his impairments
were "not fully credible" and gave subjective symptoms limited
weight in the decision.  (<u>Id.</u> at 16.)

The ALJ's determination was selected for review by the
Decision Review Board (the "Board").  In a decision dated March

31, 2009, the Board adopted the ALJ's conclusion that plaintiff is not disabled, but "modifie[d] the bases" for that finding in three respects. (<u>Id.</u> at 4-7.)  First, the Board found that plaintiff suffers severe mental impairments in addition to the physical impairments identified by the ALJ. (<u>Id.</u> at 5.)  Second, it altered the ALJ's RFC finding by adding mental limitations and eliminating the need for a cane. (<u>Id.</u>)  Third, the Board determined that, given this modified RFC, plaintiff can perform unskilled work that exists in significant numbers in the national economy. (<u>Id.</u> at 6-7.)

In reaching the last of these three determinations, the Board did not rely on VE testimony.  It observed that the testifying VE "provided no testimony encompassing the modified [RFC]," because the VE's testimony overlooked plaintiff's mental limitations. (<u>Id.</u> at 7.)  The Board then cited a June 7, 2007 vocational analysis written by a Massachusetts Disability Determination Services ("DDS") examiner, to whom the Board referred as a "vocational consultant."  The DDS examiner concluded that plaintiff's RFC allowed him to perform several jobs, including Winder, Electronics Worker, and Encapsulator. The Board determined that the DDS examiner's analysis was "consistent with the information in the Dictionary of Occupational Titles" (DOT) regarding the exertional requirements of those jobs.  Based on the DDS examiner's analysis and the DOT, the Board concluded that plaintiff "can do other work in the

national economy." (Id.) The Board's decision constitutes the Social Security Administration's final adjudication of plaintiff's disability claims. (Id. at 1.)

Having exhausted his administrative remedies, plaintiff on May 21, 2009 filed this suit seeking judicial review of the agency's decision, and has moved to reverse. Defendant moves for an order affirming the Commissioner's decision.

### III. LEGAL STANDARD

**A.   Disability Determination Process**

An individual may be entitled to Social Security disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). An impairment can only be disabling if it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).

The Commissioner has developed a five-step sequential evaluation process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4) (2009); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). "Step one determines whether the plaintiff is engaged in 'substantial

6

gainful activity.'  If he is, disability benefits are denied.  If
he is not, the decisionmaker proceeds to step two, which
determines whether the plaintiff has a medically severe
impairment or combination of impairments."  <u>Bowen v. Yuckert</u>, 482
U.S. 137, 140-41 (1987) (internal citations omitted).  To
establish a severe impairment, the plaintiff must "show that he
has an 'impairment or combination of impairments which
significantly limits . . . the abilities and aptitudes necessary
to do most jobs.'"  <u>Id.</u> at 146 (quoting 20 C.F.R. §§ 404.1520(c),
404.1521(b)).

     If the plaintiff has a severe impairment, the third step is
to determine "whether the impairment is equivalent to one of a
number of listed impairments that . . . are so severe as to
preclude substantial gainful activity."  <u>Id.</u> at 141. (citing 20
C.F.R. §§ 404.1520(d), 404.1520(d)).  If so, the plaintiff is
conclusively presumed to be disabled.  <u>Id.</u>  If not, the fourth
step evaluates whether the impairment prevents the plaintiff from
performing his past work.  <u>Id.</u>  If he is able to do so, he is not
disabled.  <u>Id.</u>  If he cannot perform his past work, however, the
burden shifts to the Commissioner on the fifth step to prove that
the plaintiff "is able to perform other work in the national
economy in view of his age, education, and work experience."  <u>Id.</u>
at 142, 146 n.5.  During steps one, two, and four, the burden of
proof is on the claimant.  <u>Id.</u> at 146 n. 5.  At the fifth step,
the burden is on the Commissioner to show that the plaintiff can

perform other work.  <u>Id.</u> at 142.  If the Commissioner fails to meet this burden, the plaintiff is entitled to benefits.  <u>Id.</u>

**B.   Standard of Review**

In reviewing disability and disability insurance decisions made by the Commissioner, this Court does not make de novo determinations.  <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981).  Rather, the Court "must affirm the [Commissioner's] findings if they are supported by substantial evidence."  <u>Cashman v. Shalala</u>, 817 F. Supp. 217, 220 (D. Mass. 1993); see also <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (stating that the Commissioner's determination must be affirmed "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence").

Substantial evidence is "more than a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence means such relevant evidence as a "reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the Commissioner's] conclusion." <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)).  In reviewing the record for substantial evidence, the Court is "to keep in mind

that '[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner].'" Rodriguez, 647 F.2d at 222 (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). When a conflict exists in the record, the ALJ bears the duty to weigh the evidence and resolve material conflicts in testimony. See Richardson, 402 U.S. at 339; Irlanda Ortiz, 955 F.2d at 769. An ALJ's or the Board's findings of fact, however, are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## IV.  DISCUSSION

Plaintiff argues that the Board's Step 5 finding that plaintiff can do other work in the national economy is not supported by substantial evidence.  According to the plaintiff, the Board: (1) erred in relying on a state disability examiner's written vocational analysis in lieu of VE testimony; and (2) failed adequately to address plaintiff's subjective pain complaints.

## A.  Vocational Analysis

Plaintiff argues first that the Board improperly treated the State disability examiner's vocational analysis as a substitute for VE testimony.  Because he was never afforded an opportunity to inspect the examiner's credentials or to cross-examine her

under oath, plaintiff argues, his right to due process was violated.

As plaintiff concedes, VE testimony is a permitted, but not necessarily required, part of an ALJ's analysis. <u>See</u> Social Security Ruling ("SSR") 96-9p, Determining Capability to Do Other Work — Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 61 Fed.Reg. 34478-01, 34483 (June 7, 1996) ("In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert."). However, once a VE's opinion is rendered, the claimant "has the right to review and respond to the VE evidence prior to the issuance of a decision." <u>Id.</u> at 34483 n. 8.  Plaintiff claims he was denied this right to review and respond to the VE's testimony.  Defendant contends that this right was never triggered, because the Board found the VE's testimony inapposite in light of its failure to address plaintiff's mental health issues.  Instead, the Board cited the DDS examiner's analysis to the effect that plaintiff could perform certain jobs, and verified the requirements of these jobs by reference to the DOT. Defendant therefore argues that the Board relied primarily on the DOT, rather than the VE, in reaching its Step 5 decision.

Where, as here, a claimant's occupational base is significantly limited by non-exertional impairments, it is unlikely that citation of the DOT would alone suffice to satisfy the Commissioner's Step 5 burden.  <u>See</u> <u>Heggarty v. Sullivan</u>, 947

F.2d 990, 996 (1st Cir. 1991) (stating that vocational evidence, such as VE testimony, generally required in such cases); Giancola v. Shalala, 913 F. Supp. 638, 646 (D. Mass. 1996) ("[W]here the claimant is not able to perform the full range of jobs within a category, the [Commissioner] must carry [his] burden by relying on the testimony of a vocational expert."). However, even assuming that mere citation of the DOT were sufficient to carry the Commissioner's Step 5 burden, the Board's decision cannot fairly be read as resting primarily on that reference. After noting that evidence from the testifying VE was inapposite because it did not address plaintiff's mental health, the Board continued: "However, the record includes an analysis provided by a vocational consultant that does encompass the modified [RFC]." (Tr. at 7.)  In short, the Board unambiguously substituted the DDS examiner's vocational analysis for VE testimony.  Its subsequent remark that "[t]he vocational consultant's analysis was consistent with the information in the [DOT]" was an attempt to corroborate the vocational analysis using the DOT, not the other way around.  (Id.)

Plaintiff correctly points out that the administrative record contains no information about the DDS examiner's qualifications or methodologies.  Plaintiff further argues that he had no opportunity to cross-examine the DDS examiner in order to establish these facts, and that the Board's reliance on the vocational analysis, absent this opportunity, was improper.  This

Court agrees.   Given that Plaintiff "is not able to perform the full range of jobs within a category," vocational expert testimony is required for the Commissioner to carry his burden of proof on Step 5.   Giancola, 913 F.Supp. at 646.   Further, where VE testimony is offered, there must be an opportunity for review and response under the regulations.   SSR 96-9p at 34483 n.8. Without plaintiff having had this opportunity, the vocational analysis cannot be treated as a substitute for VE testimony.

Plaintiff further argues that the written vocational analysis on which the Board relied is substantively unreliable in various respects.   First, he argues that the analysis was flawed because it was based on an RFC assessment that did not take into account plaintiff's osteoarthritis impairment.   Second, he argues that the three jobs cited as putatively within his ability — Winder, Electronics Worker, and Encapsulator — are not consistent with the plaintiff's RFC, which includes a limitation to simple instructions.   Third, he argues that the analyst's claim that those jobs "are common in the 50,000 position high tech industries in Massachusetts" is not supported by substantial evidence.   (Tr. at 134.)   These arguments go to the proper weight the Board should accord the vocational analysis, and Plaintiff can make these arguments on remand to the extent that the Commissioner continues to rely on that analysis.   The Court need not therefore reach them.

**B.    Pain**

The regulations governing applications for Social Security
disability benefits recognize that a claimant's symptoms may be
more severe than the objective medical evidence suggests.  See 20
C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Therefore, a series of
considerations, known as the Avery factors, should be taken into
account when an applicant alleges subjective ailments: (1) the
claimant's daily activities; (2) the location, duration,
frequency, and intensity of the pain or other symptoms; (3)
precipitating and aggravating factors; (4) the type, dosage,
effectiveness, and side effects of any medication taken to
alleviate the pain or other symptoms; (5) treatment, other than
medications, received to relieve pain or other symptoms; (6)
measures used by plaintiff to relieve pain or other symptoms; and
(7) any other factors relating to claimant's functional
limitations and restrictions due to pain.  Id.

To complete the analysis, the ALJ must often make a
determination regarding the credibility of a plaintiff's
statements regarding his symptoms and their impact.  As the
Social Security regulations state:

> It is not sufficient for the adjudicator to make a
> single, conclusory statement that 'the individual's
> allegations have been considered' or that 'the
> allegations are (or are not) credible.' It is also not
> enough for the adjudicator simply to recite the factors
> that are described in the regulations for evaluating
> symptoms.  The decision must contain specific reasons
> for the finding on credibility, supported by the

13

evidence in the case record, and must be sufficiently
specific to make clear to the individual and to any
subsequent reviewers the weight the adjudicator gave to
the individual's statements and the reasons for that
weight.

SSR 96-7p, Evaluation of Symptoms in Disability Claims: Assessing

the Credibility of an Individual's Statements, 61 Fed.Reg.

34483-01 (July 2, 1996).  Although the ALJ's credibility

determination is generally entitled to deference, "an ALJ who

does not believe a claimant's testimony regarding his pain 'must

make specific findings as to the relevant evidence he considered

in determining to disbelieve the [claimant].'"  Makuch v. Halter,

170 F. Supp. 2d 117, 126 (D. Mass. 2001) (quoting Da Rosa v.

Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)).

Additionally, when weighing evidence and evaluating the

plaintiff's credibility, the ALJ is allowed to consider the

"consistency and inherent probability of the testimony."

Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195

n.1 (1st Cir. 1987) (quoting Beavers v. Sec'y of Health, Educ. &

Welfare, 577 F.2d 383, 387 (6th Cir. 1978)).  When

inconsistencies exist in the record, the ALJ is permitted to

"discount subjective complaints of pain."  Id. (citing Underwood

v. Bowen, 807 F.2d 141, 143 (8th Cir. 1987)).

The Board adopted the ALJ's findings on plaintiff's

subjective pain complaints.  Plaintiff asserts that in making

those findings, the ALJ ignored his complaints about the side

effects of his medication.  (Tr. at 28-29.) ("[D]uring the day,
that dosage [three 40-milligram doses of methadone daily] knocks
me out and makes me too tired.") However, the ALJ specifically
noted plaintiff's testimony that "the side effects of his
medication knock him out and he lies down throughout the day as a
result," and then concluded that this and other "statements
concerning the intensity, persistence, and limiting effects of
[his] symptoms are not entirely plausible to the extent
alleged."[1]  (Tr. at 16.)  In support of his finding that the
plaintiff's testimony regarding pain was not plausible, the ALJ
noted that the plaintiff

> is able to care for his personal needs, he does laundry
> and he is able to prepare light meals.  He is able to
> do light household chores, shop, pay his bills and
> handle his finances.  In addition, the claimant watches
> television, he plays on the computer and he gets
> together with his friends several times a week.  The
> undersigned Administrative Law Judge has considered the
> claimant's impairments and is not persuaded by the
> climant's statements concerning his impairments and
> their impact on the ability to work.  The undersigned
> finds the degree of limitations to be not supported by
> the objective medical evidence of record.

---

[1]Plaintiff cites <u>Figueroa v. Sec'y of Health, Educ. &
Welfare</u>, 585 F.2d 551 (1st Cir. 1978) in support of his position;
in that case, the First Circuit ruled that, "[a]t the very least,
the administrative law judge should have made a finding on [the
plaintiff's] claim regarding side effects, making it possible for
a reviewing tribunal to know that the claim was not entirely
ignored."  <u>Id.</u> at 554.  <u>Figueroa</u> is readily distinguishable,
however, because the ALJ in <u>Figueroa</u> did not make any finding
whatsoever as to the claimant's complaints about side effects; a
reviewing tribunal could not even be sure that the complaints had
not been ignored.  <u>Id.</u> at 554.  Here, the ALJ noted the
plaintiff's complaints about side effects, but found them not
credible.

(Id.) The ALJ offered some explanation for his determination that the plaintiff's complaints about pain and his medication's side effects are not credible; namely, the ALJ concluded that the plaintiff's ability to conduct normal household tasks undercut his assertions about the extent of his impairment.  He also noted that plaintiff did not seek ongoing medical care between 2005 and 2008. (Tr. 17.)  With respect to this latter point, the record shows that the plaintiff did go into a clinic with complaints of back pain on April 3, 2007.  (Tr. 180.)  Moreover, on at least one occasion the ALJ made a more significant error in his findings about the plaintiff's daily activities.   This Court was unable to locate any information in the record to suggest that plaintiff "gets together with his friends several times a week;" indeed, the record states in several places that plaintiff no longer has friends and rarely socializes at all.  (Tr. at 32, 127, 192, 194, 218.)  Further, the ALJ offered no explanation of why he discounted the reports of plaintiff's examining treating physicians Dr. Dhar (Tr. 180), Dr. Kumar (Tr. 228-231), and Dr. Younan (Tr. 232), all of whom reported that plaintiff suffered from substantial low back pain.[2]  See Rohrberg v. Apfel, 26

_____

[2]    Plaintiff argues that his subjective pain complaints are supported by the new medical evidence that he submitted to the Board upon its review of the ALJ's decision, namely a letter from his treating physician, Dr. Derkevorkian.  (Tr at 234-35.) The Board considered that evidence at length and with proper reference to the record.  It determined that Dr. Derkevorkian's

16

F.Supp.2d 303, 309 (D. Mass. 1998) ("[W]here the ALJ makes a cursory examination of the claimant's daily activities and concludes that they are inconsistent with her claims of pain, without any specific explanation or reference to supporting evidence in the record, a reviewing court is left in the dark and the RFC is cast in a pallor of doubt.").

**ORDER**

Plaintiff's Motion to Reverse [Docket No. 17] is **<u>DENIED</u>**. Defendant's Motion for Order Affirming the Decision of the Commissioner [Docket No. 19] is **<u>DENIED</u>**.  The case is **<u>REMANDED</u>** for further proceedings consistent with this opinion.

 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge

---

opinion that plaintiff is "unable to perform any physical labor" is not supported by the record evidence, because "claimant has refused nerve blocks for his allegedly severe pain," and the record showed "no evidence of any nerve root impingement, radiculopathy or polyneuropathy in the upper or lower extremities despite the claimant's complaints of 'severe pain,' Exhibit 8F-11F." (<u>Id.</u> at 6, 234.)  There is substantial evidence to support the board's decision not to credit this opinion of this treating physician.